1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5    WYATT A.,[1]                              Case No.  24-cv-00712-SK

                    Plaintiff,
6                                              **ORDER DENYING PLAINTIFF'S**
7         v.                                   **MOTION FOR SUMMARY**
                                               **JUDGMENT; GRANTING**
8    MARTIN J. O'MALLEY, et al.,                **DEFENDANT'S MOTION FOR**
                                               **SUMMARY JUDGMENT**
                    Defendants.
9                                              Regarding Docket Nos. 14, 17

10        This matter comes before the Court upon consideration of Plaintiff Wyatt A.'s motion for

11   summary judgment and the cross-motion for summary judgment filed by Defendant, the

12   Commissioner of Social Security (the "Commissioner").  Pursuant to Civil Local Rule 16-5, the

13   motions have been submitted on the papers without oral argument.  Having carefully considered

14   the administrative record, the parties' papers, and relevant legal authority, and the record in the

15   case, the Court hereby GRANTS Plaintiff's motion and DENIES the Commissioner's cross-

16   motion for summary judgment for the reasons set forth below.

17                                      **BACKGROUND**

18        Plaintiff was born on November 7, 1992.  (Administrative Record ("AR") 189.)  On July

19   19, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits,

20   alleging he was disabled starting on March 19, 2021.  (AR 17, 189-193.)

21        On November 29, 2022, Plaintiff, accompanied by counsel, testified at a hearing before the

22   Administrative Law Judge ("ALJ").  (AR 38-69.)  Vocational expert Michael A. Frank also

23   testified at the hearing.  (*Id.*)

24        The ALJ found that Plaintiff meets the insured status requirements of the Social Security

25   Act through June 30, 2025, and that he has not engaged in substantial gainful activity since March

26

27        [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure
28   5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
     Management of the Judicial Conference of the United States.

19, 2021, the alleged onset date.  (AR 19.)  The ALJ found that Plaintiff has the following severe impairments:  anxiety disorder, depression, and bipolar disorder.  (AR 20.)

The ALJ found that Plaintiff has moderate limitations in interacting with others and concentrating, persisting, or maintaining pace.  (AR 21.)  The ALJ found that Plaintiff has mild limitations in understanding, remembering, or applying information and in adapting or managing himself.  (AR 20-21.)  The ALJ did not find that Plaintiff has any marked limitations.  The ALJ found that Plaintiff thus did not have mental impairments to satisfy the "paragraph B" criteria to establish disability and that "paragraph C" criteria were not met.  (AR 21.)

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with no interaction with the general public or coworkers and occasional interaction with supervisors.  (AR 22.)  Thus, the ALJ found that Plaintiff is capable of performing past relevant work as a mail sorter or bottle packer.  (AR 29.)  The ALJ also accepted the testimony of the vocational expert that Plaintiff can make an adjustment to other jobs that exist in sufficient numbers in the national economy.  (AR 31.)  Thus, the ALJ concluded that Plaintiff is not disabled.  (*Id.*)

Plaintiff argues that the ALJ erred in the supportability and consistency analysis for two medical providers: David Mashburn, Ph.D., and Kara Zertuche, PMHNP-BC.[2]

## ANALYSIS

A.    **Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the

---

[2] This term refers to a board-certified psychiatric-mental health nurse practitioner.

1    Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be

2    upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at

3    720-21.

4    **B.    Legal Standard for Establishing a Prima Facie Case for Disability.**

5          Disability is "the inability to engage in any substantial gainful activity" because of a

6    medical impairment which can result in death or "which has lasted or can be expected to last for a

7    continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether

8    a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*,

9    482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing

10   a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d

11   1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett*

12   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

13         The five-step analysis proceeds as follows. First, the claimant must not be engaged in

14   substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe"

15   impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must

16   significantly limit physical or mental ability to do basic work activities and must be of twelve

17   months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's

18   impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of

19   impairments presumed severe enough to preclude work), benefits are awarded without

20   consideration of the claimant's age, education, or work experience. 20 C.F.R. § 20 C.F.R.

21   404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the

22   ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC")

23   based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. §

24   416.920(e). The RFC measurement describes the most an individual can do despite his or her

25   limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work,

26   benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work,

27   the ALJ will proceed to step five. *Id.*

28         At step five, the ALJ determines whether the claimant can make an adjustment to other

United States District Court
Northern District of California

3

1    work.  20 C.F.R. § 404.1520(f)(1).  If the claimant can make the adjustment to other work, the

2    ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other

3    work, the ALJ will find that the claimant is disabled.  *Id.* at 404.1520(e) and (g).  There are two

4    ways to make this determination: (1) by the testimony of an impartial vocational expert or by

5    reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2.  *Id.*

6    **C.**      **The ALJ's Decision.**

7            In 2017, the Social Security Administration revised its rules for evaluating medical

8    evidence.  *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022).  Under the revised regulations,

9    "there is not an inherent persuasiveness to evidence from [government consultants] over [a

10   claimant's] own medical source(s), and vice versa."  *Id.*, quoting Revisions to Rules Regarding the

11   Evaluation of Medical Evidence, 82 Fed. Reg. at 5844.  "The most important factors" that the

12   agency considers when evaluating the persuasiveness of medical opinions are "supportability" and

13   "consistency."  *Id.*, quoting 20 C.F.R. § 404.1520c(a).  Supportability means the extent to which a

14   medical source supports the medical opinion by explaining the "relevant . . . objective medical

15   evidence."  20 C.F.R. § 404.1520c(c)(1).  Consistency means the extent to which a medical

16   opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in

17   the claim."  20 C.F.R. § 404.1520c(c)(2).  "The revised regulations recognize that a medical

18   source's relationship with the claimant is still relevant when assessing the persuasiveness of the

19   source's opinion."  *Woods*, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3).  Therefore, "an

20   ALJ can still consider the length and purpose of the treatment relationship, the frequency of

21   examinations, the kinds and extent of examinations that the medical source has performed or

22   ordered from specialists, and whether the medical source has examined the claimant or merely

23   reviewed the claimant's records."  *Id.*, citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v).  That said, "the

24   ALJ no longer needs to make specific findings regarding these relationship factors."  *Id.*  "Even

25   under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as

26   unsupported or inconsistent without providing an explanation supported by substantial evidence."

27   *Id.*  An ALJ must "articulate . . . how persuasive" he or she finds "all of the medical opinions"

28   from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [he or she]

1    considered the supportability and consistency factors" in reaching these findings.  20 C.F.R §

2    404.1520c(b)(2).

3        **1.    David Mashburn, Ph.D.**

4        The ALJ found Mashburn's opinion was somewhat persuasive.  (AR 28.)  The ALJ noted

5    that Mashburn's opinion was supported by a one-time examination.  (AR 28.)  Mashburn's

6    examination was conducted through a telephonic interview and was not in person.  (AR 337.)

7    Mashburn found that Plaintiff has marked limitations in two main categories: (1) performing

8    activities within a schedule, maintaining regular attendance, and being punctual without special

9    supervision, and (2) completing a normal workday and workweek without interruption from

10   psychologically-based symptoms.  (AR 27 (citing AR 336-340).)  Mashburn also found that

11   Plaintiff has moderate limitations with respect to understanding, remembering and persisting in

12   task by following detailed instructions, adapting to changes in a routine work setting, making

13   simple work-related decisions, and maintaining appropriate behavior in a work setting.  (AR 27

14   (citing AR 336-340).)

15       The ALJ found that Mashburn's opinions that Plaintiff would have moderate limitations

16   with regard to maintaining appropriate behavior in a work setting was consistent with the

17   Plaintiff's reports that he experiences social anxiety when around two or more unfamiliar people,

18   such as when grocery shopping.  (AR 28 (citing AR 262-269 (Mashburn's evaluation), 816

19   (progress note from Donna Marie Sweet, LMHCA), 860 (Jefferson progress note), and Plaintiff's

20   testimony).)  The ALJ also noted that Mashburn's opinions regarding Plaintiff's moderate

21   limitations, except for the opined difficulty in making simple work-related decisions, were

22   supported by Mashburn's one-time examination of Plaintiff that documented the Plaintiff's reports

23   of improvement with medication, his cooperative behavior, goal directed speech, normal fund of

24   knowledge, normal concentration, and normal insight and judgment, as well as his 30/30 score on

25   the Mini Mental Status Examination and generally aligned with the overall medical evidence of

26   record.  (AR 28.)

27       But the ALJ also rejected part of Mashburn's opinions.  The ALJ found that Mashburn's

28   opinion about marked limitations was not consistent with the Plaintiff's "generally conservative

United States District Court
Northern District of California

treatment with some improvement," "generally independent activities of daily living," and mental status examinations "within normal limits."  (AR 28 (citing AR 262-269, 339, 356-357, 362, 786, 791, 862, 936-937, 976-977).)

    The Court finds that the ALJ erred in finding that Plaintiff's treatment was conservative, but nevertheless finds that this error was harmless because the ALJ provided other reasons that are supported by substantial evidence in the record and that are sufficient to support the partial rejection of Mashburn's opinions.  Plaintiff has been treated by medical providers and has or had taken the following medications for his mental impairments: propranolol, lamotrigine, Vraylar, Latuda, buspirone, and Abilify.  (AR 22, 24, 25.)  Courts within the Ninth Circuit have repeatedly held that taking psychiatric medications, including antipsychotics and antidepressants such as the medications taken by Plaintiff, is not considered conservative treatment.  *McCormick v. O'Malley*, 2024 WL 3203184, at *9 (E.D. Cal. June 27, 2024) (citing cases); *see also Garcia v. Comm'r of Soc. Sec.*, 2022 WL 2110709, at *6-7 (E.D. Cal. June 10, 2022); *A.B. v. Saul*, 2019 WL 6139163, at *8 (C.D. Cal. July 23, 2019) (collecting cases stating that treatment with antipsychotic or antidepressant medication does not qualify as "conservative" treatment); *Baker v. Astrue*, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment").

    However, the ALJ also discussed Mashburn's opinions that Plaintiff has marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual without special supervision, and in completing a normal workday and workweek without interruption from psychologically-based symptoms.  (AR 27-28.)  The ALJ noted that those opinions were inconsistent with and were not supported by Plaintiff's experiencing some improvement with the medications, his generally independent activities of daily living, and his many mental status examinations within normal limits that documented casual appearance, cooperative behavior, normal eye contact, calm motor activity, normal speech, normal and intermittently tangential thought process, no delusions, appropriate affect, sometimes anxious and depressed mood, attentive concentration, grossly intact memory, and good insight and judgment (AR 27-28 (citing AR 263, 336 (Mashburn's evaluation), 356-57 (psychiatric evaluation by

Ashley T. Jefferson, ARNP[3]), 360 (Jefferson progress note), 786 (same), 791 (same), 862 (same), 936-37 (Zertuche's treatment note), 976-77 (same), and Plaintiff's testimony).) The ALJ also found that Mashburn's opinion that Plaintiff would have difficulty making simple work-related decisions was inconsistent with Plaintiff's good insight and judgment, as well as his normal Mini Mental Status Examination. (AR 28 (citing AR 336 (Mashburn's evaluation), 338 (same), 342 (Folstein Mini-Mental State Exam), 356-57(Jefferson evaluation), 362 (Jefferson progress note), 786 (same), 791 (same), 862 (same), 936-37 (Zertuche's treatment note), 976-77 (same).)

The ALJ's findings are supported by substantial evidence in the record. In his own function report, Plaintiff stated that that he does yoga, helps prepare coffee, tea, lunch and simple meals, walks his dog, goes to the gym, writes music, hikes, goes to the zoo, runs errands, cleans, does laundry, can sometimes text friends and use social media, does chores, and watches television with his pets, but that he does struggle to cook consistently and does not drive during "episodes." (AR 263-266.) Plaintiff also self-reported that he follows written and spoken directions very well. (AR 267.)

The ALJ also noted that Mashburn reported that Plaintiff explained he had improved with medication. (AR 28 (citing AR 336-340).) Plaintiff told Mashburn that his current medication "seems to be helping" and that his current dosage of Latuda "seems to be making a difference." (AR 336.) The ALJ highlighted that Plaintiff continued to improve with medication and treatment and noted that in July 2021, Plaintiff "reported that his mood was 'mostly pretty stable' with some residual irritability and paranoia" and that his anxiety was only bad in public settings. (AR 24 (citing AR 360).) In August 2021 Plaintiff reported that while his sleep, appetite, and mood were not great when he was traveling with his girlfriend, his sleep and appetite had improved since returning home and stated his medications were "in a good spot" and thought his mood would even out better once he had settled back into being home. (AR 24-25 (citing 779).) The following month, while reporting some difficulties, Plaintiff also noted he continued to make positive lifestyle changes and that "he is slowly improving." (AR 25 (citing AR 784).) In October 2021,

[3] ARNP is an acronym for advanced registered nurse practitioner.

United States District Court
Northern District of California

Plaintiff reported "it's been pretty alright." Plaintiff said that he had been able to eat more with less throwing up, had more energy in the morning with some continued irritability, had decreased mood swings since increasing lamotrigine, had decreased anxiety, and that buspirone keeps his mood pretty balanced and decreased his irritability, and he denied symptoms of mania. (AR 25 (citing AR795).) The ALJ noted that a therapy session, Plaintiff's progress was described as improved. (AR 25 (citing AR 810).) At the next therapy session, the therapist described Plaintiff as looking more cheerful and less worried. (AR 25 (citing AR 812).) The therapist observed that Plaintiff was "making strong progress." (AR 812.) Over the next few months, the ALJ noted that Plaintiff had reported better moods, being optimistic about future goals such as going back to school or work part-time, having "a lot less mood swings." (AR 25 (citing AR 815, 854, 860).) While Plaintiff still reported some anxiety, he continued to report improvement in March through July 2022, including improvement with his depression and anxiety, having "pretty good" moods, improved concentration, increased energy, and not feeling manic. (AR 26 (citing AR 936-37, 948-49, 951, 953, 958-62, 968, 973, 976-77, 986, 988, 1022-23).)

Additionally, the ALJ noted that Plaintiff scored a 30 out of 30 in the Folstein Mini Mental Status Examination, which is a "normal" finding. (AR 28 (citing AR 667-668).) On the mini mental status examination Plaintiff was able to recall three out of three items immediately and after five minutes, Plaintiff could perform serial 7 subtraction from 100 and spell "world" backwards. (AR 667-668).

Moreover, the evaluation report by Ashley T. Jefferson, ARNP[4] from June 9, 2021, stated that Plaintiff was normal in his eye contact, speech, and thought process (but intermittently tangential), and that his insight and judgment were good. (AR 356-357.) Furthermore, Jefferson noted that Plaintiff was calm, that he had no delusions, and that he had an appropriate affect, a cooperative attitude, attentive concentration, grossly intact memory and orientation, and linear thoughts. (AR 356-357.) Jefferson also found that Plaintiff's mood was anxious. (AR 356-357.) Later, on July 8, 2021, Jefferson reported that Plaintiff reported mild to moderate depression but

---

[4] ARNP is an acronym for advanced registered nurse practitioners.

United States District Court
Northern District of California

that his mood had been mostly stable and that he had started working and was working out.  (AR 362.)  On September 14, 2021, Jefferson reported that Plaintiff's status was similar to the previous visit but that he was anxious instead of depressed and that Plaintiff was pleasant, calm, and cooperative and that his thought process was normal.  (AR 786.)  Jefferson's reports from September 24, 2021 and January 4, 2022 were similar.  (AR 791, 862.)

The ALJ also relied in part on the treatment notes from Zertuche.  On May 18, 2022, Zertuche observed that Plaintiff was clean, neat, and casually groomed and that he had a cooperative and pleasant attitude.  (AR 976-977.)  He was calm and relaxed and reported that his mood was "now pretty good."  (AR 976-977.)  Zertuche reported that Plaintiff's speech had a normal rate, rhythm, volume and "prosody," and his thought process was logical, linear and goal-directed.  (AR 976-977.)  He had no delusions, phobias, no reported obsessions/compulsions, and no bizarre thinking.  (AR 976-977.)  His judgment was good, and he was attentive.  (AR 976-977.)  On September 29, 2022, Zertuche, again, observed that Plaintiff was clean, neat, and casually groomed and that he had a cooperative and pleasant attitude.  (AR 936-937.)  Plaintiff's affect was "sad" and "down," but, again, his speech had a normal rate, rhythm, volume and "prosody," and his thought process was logical, linear and goal-directed.  (AR 936-937.)  His judgment was good, and he had no suicidal thoughts and no delusions.  (AR 936-937.)

Plaintiff complains that the ALJ relied too heavily on the fact that Mashburn formed his opinion after only one examination but, as noted above, even the revised regulations allow consideration of the relationship with Plaintiff – specifically the frequency of examinations.  20 C.F.R. 404.1520c(c)(3)(ii) ("The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).")  The revised regulations list the relationship as one of many factors in considering medical opinions.  Here, the ALJ properly noted that Mashburn examined Plaintiff only once and that the weight of the long-term medical evidence did not support Mashburn's opinions.

Moreover, two consultants, Carol Moore, Ph.D. and Kristine Harrison, Psy.D, reviewed Plaintiff's medical records and provided mental residual functional capacity assessments finding that Plaintiff had moderate limitations in concentrate, persist, or maintain pace and adapt or

manage oneself, a mild limitation in interact with others, and no limitation in understand, remember, and apply information (*Id.*). Moore and Harrison found the claimant had the ability to perform both simple, routine task and complex, detailed task type work with occasional interruptions in concentration, persistence, and pace, was able to meet the goals and expectation of employers, but that Plaintiff may have some difficulty with changes in work setting initially and would require additional time when adjusting to changes. The ALJ found that these opinions were persuasive with respect to all of their findings with the exception that the ALJ determined that Plaintiff would have difficulty interacting with others in the workplace based on consideration of Plaintiff's reports of increased anxiety when around two or more unfamiliar people and his occasional reports of irritability despite treatment compliance. (AR 27.) The ALJ found that these doctors' opinions were not well supported or consistent with the record with respect to Plaintiff's limitations in interacting with others in the workplace but otherwise found that their opinions were persuasive. (*Id.*) Notably, Plaintiff did not challenge the ALJ's acceptance of Moore's and Harrison's opinions.

"The key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Upon review of the ALJ's findings and the administrative record, the Court concludes that the ALJ's partial rejection of Mashburn's opinions is supported by substantial evidence.

**2.     Kara Zertuche, PMHNP-BC.**

The ALJ also found Zertuche's opinion to be unpersuasive. (AR 28.) On September 29, 2022, Zertuche, who is one of Plaintiff's medical providers, completed a Mental Medical Source Statement. (AR 978-980.) Zertuche found that Plaintiff had marked limitations in six categories: (1) the ability to make judgments on simple work-related decisions, (2) understanding and remembering complex instructions, (3) carrying out complex instructions, (4) ability to make judgments on complex work-related decisions, (5) interacting appropriately with co-workers, (6) responding appropriately to usual work situations and to changes in a routine work setting. (AR 978-979.) Zertuche found extreme limitations in the areas of interacting appropriately with the

United States District Court
Northern District of California

1  public and supervisors.  (*Id*.)  Zertuche found moderate limitations in the areas of understanding

2  and remembering simple instructions and mild limitations in carrying out simple instructions.

3  (*Id*.)

4          The ALJ rejected Zertuche's opinions.  He found them inconsistent with Plaintiff's

5  "generally conservative treatment with some improvement and mental status examinations that

6  documented casual appearance, cooperative behavior, normal eye contact, calm motor activity,

7  normal speech, normal and intermittently tangential thought process, no delusions, appropriate

8  affect, sometimes anxious and depressed mood, attentive concentration, grossly intact memory,

9  and good insight and judgment." (AR 28.)  The ALJ further found her opinions inconsistent with

10  the claimant's generally independent activities of daily living that included caring for his dogs and

11  cats, going to the gym, organizing his kitchen, reading, writing, playing music, watching

12  television, and hiking.  (*Id*.)  As noted above, while the ALJ's reliance on Plaintiff's improvement

13  with treatment, his mental status examinations, and his independent activities of daily living was

14  appropriate, the ALJ erred in determining that Plaintiff's treatment was conservative.  With

15  respect to supportability, the ALJ rejected her opinions on the grounds that Zertuche relied heavily

16  on Plaintiff's subjective reports of his symptoms and limitations.  However, mental limitations are

17  often assessed, in large part, based on a claimant's self-reporting.  As the Ninth Circuit has pointed

18  out:

19              mental health professionals frequently rely on the combination of
20              their observations and the patient's reports of symptoms (as do all
                doctors) .... To allow an ALJ to discredit a mental health
21              professional's opinion solely because it is based to a significant degree
                on a patient's "subjective allegations" is to allow an end-run around
22              our rules for evaluating medical opinions for the entire category of
                psychological disorders.

23  *Ferrando v. Comm'r of SSA*, 449 Fed. Appx. 610, 612 n. 2 (9th Cir. 2011).  For mental

24  impairments:

25              [d]iagnoses will always depend in part on the patient's self-report, as
26              well as on the clinician's observations of the patient. . . . [S]uch is the
                nature of psychiatry.  *See Poulin* [*v. Bowen*, 817 F.2d 865,] 873 [D.C.
27              Cir. 1987] ("[U]nlike a broken arm, a mind cannot be x-rayed.").
                Thus, the rule allowing an ALJ to reject opinions based on self-reports
28              does not apply in the same manner to opinions regarding mental
                illness.

1    *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

2         The ALJ evaluated the of Zertuche's opinions based solely on her purported improper

3 reliance on Plaintiff's self-reported symptoms.  Because the ALJ did not provide any other basis

4 for rejecting her opinions as unsupported, the Court cannot determine that this error was harmless.

5 A court is precluded from considering an error to be "harmless unless it can confidently conclude

6 that no reasonable ALJ . . . could have reached a different disability determination."  *Stout v.*

7 *Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding an ALJ's failure to consider and

8 comment upon uncontradicted lay testimony was not harmless error).  A court may find harmless

9 error where the error was inconsequential to the ultimate disability determination.  *Id.* at 1055.  If

10 the ALJ had credited Zertuche's opinions, it would have supported a finding that Plaintiff is

11 disabled because Zertuche found an extreme limitation in interacting with others.  (AR 978-980;

12 20 C.F.R. 404.1520(d), 416.926.)  Thus, the Court grants Plaintiff's motion for summary judgment

13 and will remand this matter for further proceedings solely on this issue of whether the ALJ should

14 accept or reject Zertuche's opinions.  To clarify, the ALJ may not reject her opinions because she

15 relied upon Plaintiff's self-reporting or because Plaintiff had conservative treatment, but the ALJ

16 is free to examine the remainder of the record.

**CONCLUSION**

18         For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment

19 and DENIES the Commissioner's cross-motion for summary judgment.  The Court vacates the

20 Commissioner's final decision and REMANDS for further administrative proceedings consistent

21 with this order.  The Court shall issue a separate judgment, and the Clerk shall close this file.

22         **IT IS SO ORDERED**.

23 Dated: December 13, 2024

 

SALLIE KIM
United States Magistrate Judge